HUFFORD ET AL., GDNS., APPELLEES, *v.* FARMERS MUTUAL FIRE INSURANCE CO., APPELLANT.

(No. 766—Decided November 24, 1961.)

*Messrs. Marchal & Marchal,* for appellees.

*Mr. Jesse K. Brumbaugh* and *Mr. John C. Brumbaugh,* for appellant.

KERNS, J. This action was commenced by Vera Hufford and Lloyd Meehan, as guardians of the estate and person of Elmer V. Meehan, to recover upon a certain policy of insurance issued by the Farmers Mutual Fire Insurance Company of Greenville, Ohio. The prayer of the plaintiffs' amended petition sought judgment in the amount of $16,392 for the loss by fire of the residence property and household goods of Meehan. The defendant filed an answer alleging that the loss resulted from the act of Meehan, the insured, in setting fire to the property and causing it to be burned.

The plaintiffs' reply admits that their ward, Meehan, set fire to the property, but alleges that he was insane at the time of such act. The parties stipulated that the plaintiffs' ward was the owner of the property, and that the amount claimed was based on true values. Only one issue remained—whether

Meehan was insane when he destroyed his property. The case went to trial upon this issue, and at the conclusion of all the evidence, the trial court directed the jury to return a verdict in favor of the plaintiffs.

In the appeal to this court, three errors have been assigned, but each raises the same question:

Was the evidence presented in the case, when construed most favorably to the defendant, such that reasonable minds could only conclude that Meehan was insane when he set fire to and destroyed his property on July 18, 1959?

The evidence discloses that a mental illness affidavit was filed against Elmer Meehan by his son, James, on December 23, 1958; that the matter was heard by the Probate Court of Darke County on December 26, 1958; and that as the result of the hearing Meehan was ordered detained at the Dayton State Hospital, where he remained until May 1959, at which time he was released on a trial visit to his home. The matter was continued for 60-day periods, the last of such continuances being filed on July 6, 1959. On July 28, 1959, Meehan was found to be mentally ill and formally committed to the Dayton State Hospital.

The testimony discloses also that the plaintiffs' ward was 74 years of age; that his son and daughter-in-law resided with him in his farm home; that on three different occasions he made improper advances to his daughter-in-law; that the last of said attacks occurred three or four days before the fire; and that because of such attack the daughter-in-law moved to her mother's home in Dayton and refused to return to the residence in fear of her personal safety.

The testimony reveals that on the 18th day of July, the day in question, Meehan had hauled grain to the elevator with a neighbor and appeared normal; that his son, James, returned home about four o'clock in the afternoon, having gone to the elevator to get some feed ground for the livestock and to the grocery store for groceries for himself and his father; and that, upon arriving at the house, he took the groceries to the house where he saw his father, and then went to the barn to unload the feed.

At this point, Meehan appeared with a rifle and, pointing the gun at his son, James, said that he and his son "were going to leave there together." According to the testimony, he then

attempted to shoot his son, but the automatic rifle failed because of the ''safety or something,'' at which time Meehan removed the rifle from his shoulder to see what was wrong. The son, James, then threw a bucket at his father and ran across a field to a neighbor's house. By the time he reached the neighbor's house, he could see smoke coming from his father's house, so he had the neighbor, Walter Neal, call the fire department.

The first person upon the scene after the fire had attracted attention was E. E. Stoner who found Meehan with blood running down his face. He had shot himself and admitted setting fire to the house.

Stoner testified that Meehan twice threatened to run into the burning house; that he restrained him from doing so for about 20 minutes; and that Meehan cursed him for doing so and threatened to hit him in the nose. In summarizing the evidence of events occurring at or about the time of the act in question, it thus appears that the plaintiffs' ward, without immediate provocation, attempted to shoot his son, secured gasoline from a container in the farm yard, poured it upon and set fire to the house, shot himself in the temple with a rifle and attempted to re-enter the burning house.

In all, the testimony of five medical witnesses, at least one of whom was a psychiatrist, and each of whom was in a position to observe Meehan either before or soon after he set fire to the house, was submitted in evidence, and variously refers to Meehan's behavior as that of an ''insane,'' ''abnormal'' or ''incompetent'' man.

It appears also that the witness Stoner, who was first upon the scene after the fire, had special training working with mentally ill patients as a hospital corpsman in the Navy. He described Meehan as ''very much mentally disturbed'' at the time of the fire. The defense offered no medical evidence.

Since this case comes to us after the direction of a verdict, we have examined and re-examined the defendant's evidence with a view to noting anything which might have justified the submission of the case to the jury. No such justification appears from the record. The so-called scintilla rule no longer prevails in Ohio. *Hamden Lodge* v. *Ohio Fuel Gas Co.*, 127 Ohio St., 469. Perhaps the predominant element in the defendant's case is the presumption of sanity which the law attaches to any man. Here,

however, the plaintiffs' evidence overwhelmingly rebuts this presumption.

Upon the evidence presented in this case, and construing the evidence most favorably to the defendant, as we must, it is inconceivable, in our opinion, that the jury would, or reasonably could, return a verdict other than that which the trial court directed it to return. Accordingly, we find no assignment of error well made. The judgment will be affirmed.

*Judgment affirmed.*

CRAWFORD, P. J., and SHERER, J., concur.